**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

ANGELA LAWRENCE,                                    15 Civ. 8947 (WHP) (AJP)

                    Plaintiff,                    <u>MEMORANDUM OF LAW</u>

CITY OF NEW YORK, DANIEL NUNEZ, Individually,
DANIEL BEDDOWS, Individually, JUAN RODRIGUEZ,
Individually, JENS MALDONADO, Individually, JOHN
ANZELINO, Individually, and MICHAEL RASO,
Individually,

                    Defendants.

------------------------------------------------------------------------x

## <u>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'</u>
## <u>MOTION FOR SANCTIONS AND ATTORNEYS' FEES AND COSTS</u>

**LAW OFFICES OF MICHAEL S. ROSS**
**60 EAST 42ND STREET**
**FORTY-SEVENTH FLOOR**
**NEW YORK, NEW YORK 10165**
**(212) 505-5200**

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT ...........................................................................1

STATEMENT OF FACTS ....................................................................................3

ARGUMENT .........................................................................................................9

     I.       FRCP 11 SANCTIONS SHOULD NOT BE IMPOSED BECAUSE MR. LEVENTHAL PERFORMED A REASONABLE INQUIRY INTO THE MERITS OF THIS ACTION AND REASONABLY BELIEVED THAT HIS FACTUAL CONTENTIONS HAD MERIT ......................................9

     II.     MR. LEVENTHAL COMPLIED WITH FRCP 11'S SAFE HARBOR PROVISIONS, PRECLUDING THE IMPOSITION OF FRCP 11 SANCTIONS AGAINST HIM ................................................................. 16

     III.    FRCP 26 SANCTIONS SHOULD NOT BE IMPOSED BECAUSE MR. LEVENTHAL BELIEVED IN GOOD FAITH THAT HIS DISCOVERY RESPONSES WERE COMPLETE AND CORRECT AS OF THE TIME THEY WERE MADE, AND BECAUSE HE TIMELY CORRECTED THOSE RESPONSES ............................................. 17

     IV.    FRCP 37 SANCTIONS SHOULD NOT BE IMPOSED BECAUSE MR. LEVENTHAL ACTED ETHICALLY WITH RESPECT TO HIS DISCOVERY OBLIGATIONS AND DID NOT ENGAGE IN WILLFUL NON-COMPLIANCE ................................................................. 20

     V.     ATTORNEYS' FEES AND COSTS SHOULD NOT BE ASSESSED AGAINST MR. LEVENTHAL BECAUSE HE ACTED IN GOOD FAITH RELIANCE ON HIS CLIENT .................................................. 23

CONCLUSION.....................................................................................................24

# TABLE OF AUTHORITIES

**PAGE**

**FEDERAL CASES**

Advanced Video Tech. LLC v. HTC Corp.,
    2015 U.S. Dist. LEXIS 122423 (S.D.N.Y. Aug. 28, 2015)...............................................10

Aguilar v. Immigration & Customs Enforcement Div.,
    255 F.R.D. 350 (S.D.N.Y. 2008) ..............................................................................19, 22

Battiste-Downie v. Covenant House,
    471 F. Appx. 78 (2d Cir. 2012)........................................................................................21

Calloway v. Marvel Ent. Group,
    854 F.2d 1452 (2d Cir. 1988)..........................................................................................10

Ceglia v. Zuckerberg,
    2013 U.S. Dist. LEXIS 45500 (W.D.N.Y. Mar. 26, 2013).........................................19, 20

Ceglia v. Zuckerberg,
    600 F. Appx. 34 (2d Cir. 2015)........................................................................................19

Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.,
    602 F.2d 1062 (2d Cir. 1979)..........................................................................................21

Consumer Fin. Protection Bur. v. NDG Fin. Corp.,
    2018 U.S. Dist. LEXIS 41339 (S.D.N.Y. Mar. 12, 2018) ...............................................21

Coty Inc. v. Excell Brands, LLC,
    2016 U.S. Dist. LEXIS 170817 (S.D.N.Y. Dec. 9, 2016) ...............................................21

Doe v. Delta Airlines, Inc.,
    2015 U.S. Dist. LEXIS 22739 (S.D.N.Y. Feb. 25, 2015)...............................................21

Goldenberg v. St. Barnabas Hosp.,
    2005 U.S. Dist. LEXIS 2730 (S.D.N.Y. Feb. 22, 2005)..................................................16

Greene v. Netsmart Tech. Inc.,
    2011 U.S. Dist. LEXIS 59710 (E.D.N.Y. Feb. 28, 2011)................................................22

Hadges v. Yonkers Racing Corp.,
    48 F.3d 1320 (2d Cir. 1995) .............................................................................10, 11, 19

**PAGE**

In re Sony Corp. SXRD Rear Projection Tv Mktg.,
    268 F.R.D. 509, 520 (S.D.N.Y. 2010) ....................................................... 16, 17

Mir v. Bogan,
    2015 U.S. Dist. LEXIS 39511 (S.D.N.Y. Mar. 26, 2015) ............................... 13

Mizrahi v. Network Recovery Servs.,
    1999 U.S. Dist. LEXIS 22145 (E.D.N.Y. Nov. 5, 1999)................................. 15

Morley v. Ciba-Geigy Corp.,
    66 F.3d 21 (2d Cir. 1995)................................................................................ 11

Nike, Inc. v. Top Brand Co.,
    216 F.R.D. 259 (S.D.N.Y. 2003) ................................................................... 12

Nuwesra v. Merrill Lynch, Fenner & Smith, Inc.,
    174 F.3d 87 (2d Cir. 1999)............................................................................. 23

O'Brien v. Alexander,
    101 F.3d 1479 (2d Cir. 1996).......................................................................... 12

Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,
    685 F. Supp. 2d 456 (S.D.N.Y. 2010) ........................................................... 18

Robertson v. Dowbenko,
    443 F. Appx. 659 (2d Cir. 2011)..................................................................... 21

S. New England Tel. Co. v. Global NAPs Inc.,
    624 F.3d 123 (2d Cir. 2010)........................................................................... 21

Storey v. Cello Holdings, LLC.,
    347 F.3d 370 (2d Cir. 2003)........................................................................... 10

**STATE CASES**

Facebook, Inc. v. DLA Piper LLP (US),
    134 A.D.3d 610 (App. Div. 1st Dept. 2015).................................................... 20

Helie v. McDermott, Will & Emery,
    18 Misc. 3d 673 (Sup. Ct. N.Y. Co. 2007) ......................................................3

**PAGE**

<u>RULES AND STATUTES</u>

Federal Rules of Civil Procedure:
FRCP 11 ................................................................................................*passim*
FRCP 26 ........................................................................... 1, 11, 17-20, 24
FRCP 37 ........................................................................ 1, 3, 11, 20-22, 24

Local Rules of the Southern and Eastern District Courts of New York:
Rule 1.5 ..............................................................................................3

New York Rules of Professional Conduct:
RPC 1.6 ..............................................................................................3

## PRELIMINARY STATEMENT

This Memorandum of Law is respectfully submitted on behalf of Jason L. Leventhal, Esq., former counsel to Plaintiff Angela Lawrence, in opposition to Defendants' March 23, 2018 Motion for Sanctions pursuant to Rules 11, 26 and 37 of the Federal Rules of Civil Procedure ("FRCP").

Defendants' principal argument in support of the sanctions motion is that Mr. Leventhal failed to examine metadata of certain photographs belatedly provided to him by his client, Ms. Lawrence, which Mr. Leventhal then produced to Defendants in discovery.  Defendants' *falsely* and repeatedly argue in the Motion for Sanctions that these photographs "provided the *sole* evidence of plaintiff's trespass to chattels and property damage claim."  (Doc. No. 112, p. 21 [emphasis in original], and pp. 14-15)  In fact, the evidence in this case – without the photographs – demonstrates that NYPD officers broke into Ms. Lawrence's home and destroyed her property.

It is well-settled that Mr. Leventhal was required by FRCP 11 to conduct a reasonable pre-filing inquiry into the merits of this case, which he did.  However, FRCP 11 does not apply to discovery responses.  FRCP 26, also relied upon by Defendants, does not require an attorney to review the metadata of every photograph he or she produces in discovery, and Defendants tellingly cite no authority for such a sweeping proposition.  Likewise, Mr. Leventhal's failure to examine the metadata is not tantamount to willful discovery "non-compliance" for which attorneys have been sanctioned under FRCP 37.

More fundamentally, contrary to the Defendants' demonstrably false contentions, the photographs were *not* the "*sole*" evidence in this case.  Indeed, Mr. Leventhal did not even believe that the photographs were significant, because there is other much more powerful evidence of Defendants' misconduct, including:  1) multiple findings of misconduct by the Civilian Complaint Review Board (the "CCRB") related to the incident in question; 2) Ms. Lawrence's medical

records; 3) powerful evidence of a motive; 4) Ms. Lawrence's contemporaneous 911 emergency call recording in which she discussed property damage to her home (purportedly depicted by the photographs in question); and 5) the emotional testimony of Ms. Lawrence herself.

Eventually, following his receipt of Defendants' September 11, 2017 Rule 11 safe harbor letter, Mr. Leventhal learned facts which required him to move to withdraw.  On October 11, 2017, Mr. Leventhal filed a Motion with this Court seeking to be relieved as counsel to Ms. Lawrence, and disavowing all prior statements made by him and/or Ms. Lawrence with respect to when and how the photographs were taken and related issues – to ensure that this Court and the parties in this matter did not rely on his prior representations concerning the photographs.  (Doc. No. 78)

As we demonstrate below, Defendants' Motion for Sanctions should be denied for four reasons.  *First*, Mr. Leventhal conducted a reasonable inquiry into the merits of Ms. Lawrence's case and believed that his "factual contentions ha[d] evidentiary support" as required by FRCP 11(b)(3).  Defendants' argument with respect to a lack of reasonable inquiry into the photographs under FRCP 11 is without merit because, by its express language, FRCP 11 does not apply to discovery responses.  FRCP 11(d).  *Second*, even assuming FRCP 11 applies, Mr. Leventhal satisfied his remedial obligations under FRCP 11's safe harbor provision by disavowing his and Ms. Lawrence's prior statements concerning the photographs and related matters.

*Third*, sanctions are not warranted pursuant to FRCP 26 because Mr. Leventhal believed in good faith that his discovery responses were complete and correct as of the time they were made, and because he timely corrected those responses when he learned additional facts.  Defendants' argument that the reasonable inquiry contemplated by FRCP 26(g) includes a review of metadata is without merit.  Mr. Leventhal performed a "reasonable" inquiry, under the facts known to him at the time, by reviewing the photographs to make sure the depiction of damages was consistent

with prior information provided to him by Ms. Lawrence.  Moreover, it is well-settled law that an attorney is entitled to rely on his or her client's reasonable statements as to factual claims.

*Finally*, Defendants' argument in support of sanctions under FRCP 37 is muddled and confusing.  It appears that Defendants claim that sanctions are warranted under FRCP 37 based upon Mr. Leventhal's supposed failure to conduct a reasonable inquiry into the metadata of the photographs.  However, FRCP 37 did not require Mr. Leventhal to examine the metadata of the photographs under the facts known to him then.  Moreover, Mr. Leventhal's failure to examine the metadata is not tantamount to willful discovery "non-compliance" for which attorneys have been sanctioned under FRCP 37.

For the reasons set forth more fully below, the Defendants' Motion for Sanctions against Mr. Leventhal should be denied.

## STATEMENT OF FACTS

Generally, Rule 1.6 of the New York Rules of Professional Conduct ("RPC") (applicable to this proceeding pursuant to Rule 1.5[b][5] of the Local Rules of the Southern and Eastern District Courts of New York) prohibits an attorney from revealing confidential information.  An attorney can, however, as a matter of ethics, disclose confidential information:  1) to defend the lawyer or the lawyer's employees and associates against an accusation of wrongful conduct (RPC 1.6[b][5][i]); and/or 2) if the attorney is ordered to do so by the court (RPC 1.6[b][6]).  As one court explained, "the right to part the curtain of confidentiality must be sparingly applied.  It extends only to the bare minimum 'necessary to accomplish [its] purpose.'"  Helie v. McDermott, Will & Emery, 18 Misc. 3d 673, 682 (Sup. Ct. N.Y. Co. 2007) (citations omitted).  Accordingly, our discussion of the facts is limited to the "bare minimum" necessary to defend Mr. Leventhal.

We incorporate by reference the facts set forth in Mr. Leventhal's supporting May 15, 2018 Declaration ("Decl.").  We reiterate below some of the key facts warranting Mr. Leventhal's good faith belief that Ms. Lawrence's claims have merit:

1.  On September 23, 2015, Ms. Lawrence provided Mr. Leventhal with a copy of a letter that she had received from the CCRB, dated September 2, 2015, which substantiated seven separate allegations of abuse of authority by four separate New York City Police Department ("NYPD") officers in connection with the August 16, 2014 search of her home.  (Nos.[1] D756-D780; Decl. ¶ 7)  In addition, five instances of other misconduct were noted by the CCRB, including failure by two NYPD officers to prepare a stop and frisk report and failure by three other officers to prepare memo book entries.

2.  A subsequent CCRB panel report found the allegation that Defendant "Michael Raso damaged Angela Lawrence's property" was "substantiated." (No. D758)  *To be clear*, this fact alone belies Defendants' assertion that the photographs were the "*sole* evidence of plaintiff's trespass to chattels and property damage claim."

3.  CCRB records for the six NYPD officers involved in the August 16, 2014 search of Ms. Lawrence's home (Nos. D413-D780) indicated that, on other occasions, the six officers were accused of and, in some instances, were found to have engaged in, "abuse of authority" misconduct (premises entered and/or searched) – i.e., the same misconduct the officers were found by the CCRB to have engaged in during the search of Ms. Lawrence's home. (Decl. ¶ 14)  (CCRB records would, in this case, be admissible at trial.)

4.  Mr. Leventhal's review of Ms. Lawrence's medical records, in addition to the findings of the CCRB, further confirmed the claims advanced by Ms. Lawrence.  (Decl. ¶¶ 11-13)  Montefiore Medical Center records reflected that Ms. Lawrence sought mental health treatment following the August 16, 2014 search of her home – which further confirmed Ms. Lawrence's claims in this case.  By way of example, a January 5, 2015 "Output Evaluation" report of Montefiore Medical Center's Department of Psychiatry and Behavioral Sciences for Ms. Lawrence reflected that Ms. Lawrence told her doctors, shortly after the incident, that, on August 16, 2014, seven to eight NYPD officers raided her home without a search warrant while looking for someone and broke everything she owned.  Ms. Lawrence told her doctors that she was unsure who the police were looking for, but stated that the police did not like her eldest son (Cordero Rumph).  As a result of that incident, Ms. Lawrence reported difficulty sleeping, recurrent nightmares,

---

[1] "No(s). D" followed by a number refers to Bates-stamped documents produced in discovery by the Defendants; "No(s). P" followed by a number refers to Bates-stamped documents produced in discovery by the Plaintiff, Ms. Lawrence.

anxiety, depressed mood, and decreased appetite and weight loss. Ms. Lawrence presented with Post-Traumatic Stress Disorder ("PTSD") and Major Depressive Disorder, and was treated by Montefiore Medical Center between January of 2015 and August of 2017. In addition, Ms. Lawrence was prescribed anti-depressant medication.

5.     Mr. Leventhal's review of the 911 telephone call placed by Ms. Lawrence on August 16, 2014, contemporaneously with the search of her home, in which Ms. Lawrence, among other things, described property damage by the NYPD, further supported Ms. Lawrence's claims. (Decl. ¶ 18) A review of the 14-minute long recording demonstrated that Ms. Lawrence told the 911 operator that eight NYPD officers "destroyed" her "stuff" and that her "house is destroyed." Ms. Lawrence was then connected by the 911 operator to a Detective in the Internal Affairs Bureau ("IAB"), whom Ms. Lawrence told, in sum and substance, that she refused to consent to a search of her home without a warrant, at which time multiple NYPD officers broke down her door, ransacked her house, destroyed her furniture, cut her mattress, and then left. (Decl. ¶ 8)

6.     Evidence supported the argument that the search of Ms. Lawrence's home by the NYPD on August 16, 2014, may have been motivated by the officers' desire to retaliate against Mr. Rumph (i.e., Ms. Lawrence's son), who was cooperating with the IAB in connection with an investigation into certain NYPD officers, including Defendant Daniel Nunez, between April 5, 2012 and February 13, 2014. (Decl. ¶ 20) According to the closing report for IAB Case Number 12-0250 (Nos. D2841-D2859), Mr. Rumph claimed that he had been paying protection money to certain NYPD officers, including Defendant Nunez. In sum and substance, Mr. Rumph claimed that he oversaw the distribution of large quantities of cocaine in the Bronx and earned up to $8,000 per day. Mr. Rumph claimed that: 1) in 2011, he was stopped by plainclothes NYPD officers (including Defendant Nunez), who told him that they knew about his stash houses and labs and demanded $7,000 per week for protection; 2) he paid the officers protection money for several months and was arrested on March 28, 2012, two weeks after his last payment; and 3) at the time of his arrest, the officers stole $100,000 in cash from his home. The IAB closing report also noted that Defendant Nunez had taken Mr. Rumph's two cellphones during the March 28th arrest; *failed to voucher those cellphones*; and held on to those cellphones until Mr. Rumph came to the precinct to search for his missing property!

7.     These facts led Mr. Leventhal to believe that a good faith argument could be made that the August 16, 2014 search of Ms. Lawrence's home was retaliatory in nature, was undertaken in an attempt to steal money from Mr. Rumph, and further led him to believe in good faith that Ms. Lawrence's claims had merit. The photographs were *not* an integral aspect of the case, and the primary damages would have related to Ms. Lawrence's mental health issues, not the property damages depicted by the photographs.



Following a 50-h hearing on November 4, 2015, Mr. Leventhal's firm filed the instant action on behalf of Ms. Lawrence in this Court on November 13, 2015. (Decl. ¶ 10)

In September of 2016, Ms. Lawrence provided Mr. Leventhal with certain photographs by e-mail, which she told him were taken shortly after the damage occurred. (Decl. ¶ 15) Mr. Leventhal did not review the metadata of the photographs at that time because he was not aware of the electronically stored metadata information. (Id.) Indeed, it was not until late-July of 2017 that Mr. Leventhal became familiar with the procedure for reviewing the metadata of electronically stored photographs – which involves right clicking on each file; clicking on the "settings" menu item; and then opening a tab in the settings menu which lists the metadata details. (Id.)

Moreover, Mr. Leventhal did not doubt Ms. Lawrence when she told him that the photographs were taken contemporaneously with the occurrence of the damage because the photographs were consistent with the damage Ms. Lawrence had previously described, and Ms. Lawrence's claims about the damage were further supported by the fact that Ms. Lawrence had received continuous medical treatment for PTSD, anxiety and depression between January of 2015 and August of 2017. (Decl. ¶ 15) At the time that Mr. Leventhal received the photographs from

Ms. Lawrence, he simply opened the photographs on his computer and looked at the images, which appeared to depict damage to Ms. Lawrence's apartment consistent with prior evidence in the case – i.e., her descriptions of the damage to her doctors, to Mr. Leventhal's firm, and at her 50-h examination.  (Decl. ¶ 16)

Mr. Leventhal's firm saved the photographs as PDF files, used software to Bates-stamp the PDF photograph files as "No. P102" through "No. P168" and produced them to the Defendants on September 27, 2016 and October 14, 2016.  (Decl. ¶ 17)  In his cover e-mail dated September 27, 2016, Mr. Leventhal stated that he was transmitting photographs taken by Ms. Lawrence shortly after the incident – which is what Ms. Lawrence had told him and which he did not doubt at the time.  (Id.)  *Indeed, the photographs do not look staged, and, in fact, appear to reflect a very thorough search of the home by the NYPD.*  See, e.g., No. P102 (closet door ripped off); No. P103 (pillow cut open); No. P104 (mattress torn open); No. P111 (large speaker disassembled); No. P115 (couch torn open); No. 120 (air conditioner opened); No. P158 (front door broken).

At her December 12, 2016 deposition, Ms. Lawrence testified that either her son, Mr. Rumph, or her friend, Sani Monday (a/k/a Benny Sani Monday), took the photographs of the damage approximately two to three days after the incident.  (Decl. ¶ 19)

At her April 7, 2017 continued deposition, Ms. Lawrence testified that she took some of the photographs of the damage (Nos. P102-P124, P126-P153, and P168), that her son, Mr. Rumph, took some of the other photographs (Nos. P154-P167), and that Mr. Monday did not take any photographs.  (Dep. Tr. 265, 300-02, 306)  Although Ms. Lawrence's testimony about who took the photographs had changed from her prior December 12, 2016 deposition testimony, Mr. Leventhal did not believe this testimony to be false.  Among other things, Ms. Lawrence claimed to have suffered from PTSD in connection with this incident and was discussing matters at the

deposition which occurred years earlier and on which she likely did not focus her attention at the time that they were happening.  (Decl. ¶ 21)  Mr. Leventhal believed in good faith that, because of these issues, Ms. Lawrence's initial recollection was in error and that she had corrected her testimony.  (Id.)

On April 24, 2017, Defendant Raso served "A Request for Production" seeking:  1) all cellular phones and/or other electronic devices used to take the photographs of the damage (Nos. P102-P168); 2) all personal computers used by Ms. Lawrence to download, store, view or electronically transmit those photographs; 3) all photographs/videos concerning the incident; and 4) all electronic devices and/or personal computers used by Ms. Lawrence to download, store, view or electronically transmit photographs and/or videos concerning the incidents.  (Decl. ¶ 22)  *Defendants did not, at that time, request any "metadata" or "native files" in connection with the photographs*.  (Decl. ¶ 23)

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

On ██████████ June 23rd, Mr. Leventhal's firm responded to Defendant Raso's April 24, 2017 Request for Production by objecting to requests 1, 2 and 4 as an unwarranted invasion of privacy (given that the devices sought contained irrelevant, private information).  (Decl. ¶ 25)  In response to request 3, Mr. Leventhal's firm produced the two photographs discovered earlier that day (which, as noted above, depicted the same damaged property as the previously produced photographs).  (Id.)  To be clear, although Mr. Leventhal objected to requests 1, 2 and 4, it was not

because he feared the discovery of metadata, but because he felt that the requests were unwarranted intrusions on Ms. Lawrence's privacy.  (Id.)

On August 1, 2017, Defendant Raso served a deficiency letter with respect to the June 23, 2017 discovery response.  (Decl. ¶ 26)  In that letter, *for the first time*, Defendant Raso discussed in writing the "metadata" and "native files" issue with respect to Ms. Lawrence's photographs of the damage.  (Id.)

Thereafter, as more fully detailed in Mr. Leventhal's Declaration, Mr. Leventhal learned facts which required him to withdraw from this case.  On October 11, 2017, Mr. Leventhal filed a Motion with this Court seeking to be relieved as counsel to Ms. Lawrence, and disavowing all prior statements made by him and/or Ms. Lawrence with respect to when and how the photographs were taken and related issues – to ensure that this Court and the parties in this matter did not rely on his prior representations concerning the photographs.  (Doc. No. 78)

For the reasons set forth below, Mr. Leventhal should not be the subject of sanctions.

## ARGUMENT

### I.    FRCP 11 SANCTIONS SHOULD NOT BE IMPOSED BECAUSE MR. LEVENTHAL PERFORMED A REASONABLE INQUIRY INTO THE MERITS OF THIS ACTION AND REASONABLY BELIEVED THAT HIS FACTUAL CONTENTIONS HAD MERIT.

FRCP 11 sanctions should not be imposed against Mr. Leventhal because he performed a reasonable inquiry into the merits of Ms. Lawrence's case and, under the facts known to him then, reasonably believed that his factual contentions had merit.  Among other things, Mr. Leventhal spoke with Ms. Lawrence and her son, Mr. Rumph, and he reviewed:  the CCRB records; Ms. Lawrence's medical records; and Ms. Lawrence's contemporaneous 911 telephone call recording. Mr. Leventhal was not required by FRCP 11 to review the metadata of the photographs.

FRCP 11 provides, in relevant part, that "[b]y presenting to the court a pleading, written motion, or other paper … an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, … (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery…."

With respect to factual contentions under FRCP 11, "sanctions may not be imposed unless a particular allegation is utterly lacking in support."  Storey v. Cello Holdings, LLC., 347 F.3d 370, 388 (2d Cir. 2003) (citation omitted).  Furthermore, "an attorney is entitled to rely on his or her client's statements as to factual claims when those statements are objectively reasonable." Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1329 (2d Cir. 1995).  Sanctions are to be imposed with caution, and "when divining the point at which an argument turns from merely losing to losing and sanctionable, district courts must resolve all doubts in favor of the attorney-signer."  Advanced Video Tech. LLC v. HTC Corp., 2015 U.S. Dist. LEXIS 122423, at *37 (S.D.N.Y. Aug. 28, 2015).

In Hadges, the Second Circuit addressed the issue of "the reasonableness of an attorney's reliance on information provided by a client."  48 F.3d at 1329.  The attorney in Hadges relied on, among other things, his client's incorrect statement concerning the date on which his client claimed to have been scratched by a horse he was driving.  Id.  Declining to impose sanctions, the Second Circuit reiterated the "procedure for district courts to follow in analyzing whether an attorney has conducted a reasonable inquiry into the facts underlying a party's position":

> "In considering sanctions regarding a factual claim, the initial focus of the district court should be on whether an objectively reasonable evidentiary basis for the claim was demonstrated in pretrial proceedings or at trial.  Where such a basis was shown, no inquiry into the adequacy of the attorney's pre-filing investigation is necessary."

Hadges, 48 F.3d at 1329, quoting Calloway v. Marvel Ent. Group, 854 F.2d 1452, 1470 (2d Cir. 1988).

The court went on to explain that the 1993 revisions to FRCP 11 made it clear that an attorney is entitled to rely on the client's statements and representations:

> "The new version of Rule 11 makes it even clearer that an attorney is entitled to rely on the objectively reasonable representations of the client.  No longer are attorneys required to certify that their representations are 'well grounded in fact.'  Fed.R.Civ.P. 11 (1983) amended 1993.  The current version of the Rule requires only that an attorney conduct 'an inquiry reasonable under the circumstances' into whether 'factual contentions have evidentiary support.'  Fed.R.Civ.P. 11(b) & (b)(3).  Thus, the new version of Rule 11 is in keeping with the emphasis in *Calloway* on looking to the record before imposing sanctions."

<u>Hadges</u>, 48 F.3d at 1329-330.

Here, as in <u>Hadges</u>, it is clear that the record contained evidentiary support for Mr. Leventhal's good faith belief that this case had merit, including:  1) the multiple findings of misconduct by the CCRB related to the incident in question; 2) Ms. Lawrence's medical records; 3) powerful evidence of a motive; 4) Ms. Lawrence's contemporaneous 911 recording in which she discussed property damage to her home (consistent with damages depicted by the photographs in question); and 5) eyewitness testimony, including the emotional testimony of Ms. Lawrence herself. *This is not a case where, without the photographs, Plaintiff had "no chance of success."* Cf. <u>Morley v. Ciba-Geigy Corp.</u>, 66 F.3d 21, 25 (2d Cir. 1995) ("[a]n argument constitutes a frivolous legal position for purposes of Fed. R. Civ. P. 11 sanctions if, under an objective standard of reasonableness, it is clear that there is no chance of success") (quotations and citation omitted).

FRCP 11 does not provide for sanctions in connection with the photographs produced in discovery, because FRCP 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37."  FRCP 11(d).  (Tellingly, the Motion for Sanctions alleges that the same conduct that violated FRCP 11 also violated FRCP 26 and FRCP 37 [Doc. No. 112, p. 25].)  Rather, FRCP 11 applies to "pleading[s], written motion[s], or other

paper[s]," which an attorney presents "by signing, filing, submitting, or later advocating."  FRCP

11(b).  The Advisory Committee explain that "[t]he rule applies only to assertions contained in

papers filed with or submitted to the court."  Adv. Comm. Notes, 1993 Amend.

To the extent the Motion for Sanctions relies upon Mr. Leventhal's oral statements related

to the photographs (see Doc. No. 112, p. 8), "not all oral statements are sanctionable under Rule

11, even when they advance baseless allegations."  O'Brien v. Alexander, 101 F.3d 1479, 1489

(2d Cir. 1996).  In order to be subject to FRCP 11, "the oral statement must relate directly to a

particular representation contained in the document that the lawyer is then advocating."  Id. at

1490;  see  also  Nike, Inc. v. Top Brand Co., 216 F.R.D. 259, 275 (S.D.N.Y. 2003)

("[R]epresentations made by counsel in conferences, before the court, even if inaccurate, are not

subject to Rule 11 sanctions unless presented in conjunction with an offending filing.").

Defendants' Motion for Sanctions (Doc. No. 112, p. 19) argues that "Rule 11 sanctions are

appropriate" here because:  1) Ms. Lawrence belatedly produced supposedly doctored photographs

to Mr. Leventhal; 2) Mr. Leventhal did not confirm the veracity of the photographs by checking

the metadata; 3) Ms. Lawrence supposedly testified falsely at her deposition about the

photographs; 4) Ms. Lawrence testified that her cell phone, which may have contained some

relevant photographs, was broken; 5) Ms. Lawrence e-mailed the photographs to Mr. Leventhal;

and 6) supposedly, "although plaintiff claimed to have photographs of the alleged incident on her

computer, she claimed that she erased the material."

*None of these assertions – which, quite frankly, do not make sense in the context of FRCP*

*11 – support the imposition of sanctions against Mr. Leventhal under FRCP 11.*  Defendants'

factual recitation in support of FRCP 11 sanctions (Doc. No. 112, pp. 19-20) does not identify any

inaccurate pleadings Mr. Leventhal failed to disavow and does not relate to any pre-filing conduct

or to any pleadings at all, as required by FRCP 11.  Instead, Defendants focus on Mr. Leventhal's discovery conduct – *which is not subject to FRCP 11 sanctions*.  FRCP 11(c)(2) (motion for sanctions "must describe the specific conduct that allegedly violates Rule 11[b]"); FRCP 11(d) (discovery conduct is not subject to FRCP 11).

Moreover, the original complaint in this action did not rely on any photographs, and discovery responses are not subject to sanctions under FRCP 11.  FRCP 11(d).  To the extent that Mr. Leventhal may have relied on information that was incorrect concerning the photographs, and in light of the fact that Mr. Leventhal had a reasonable basis to prosecute the action, sanctions are not appropriate against him.  Mir v. Bogan, 2015 U.S. Dist. LEXIS 39511, at *61 (S.D.N.Y. Mar. 26, 2015) ("[W]here the party … know[s] that the filing and signing is wrongful and the attorney reasonably should know, then sanctions against both are appropriate.  Where a party misleads an attorney as to facts or the purpose of a lawsuit, but the attorney nevertheless had an objectively reasonable basis to sign the papers in question, then sanctions on the party alone are appropriate.").

Defendants go on to brazenly assert in the Motion for Sanctions (Doc. No. 112, pp. 14-15) in connection with the FRCP 11 argument that:

> "Plaintiff's decision, and her attorney's claimed lack of inquiry, compels the conclusion that it was 'objectively unreasonable' to pursue a claim of trespass to chattels and seek damages to property. *The only evidence that plaintiff offered in support of her claim was the photographs*, which she deliberately and willfully manufactured with the aim of tricking defendants and the Court into believing her claim had merit."  (Emphasis added).

The photographs were not the "only evidence" of Ms. Lawrence's claims and were not even vital to the lawsuit, and Defendants' assertion quoted above is demonstrably false.  As noted above, on September 23, 2015, Ms. Lawrence provided Mr. Leventhal with a copy of a letter that she had received from the CCRB, dated September 2, 2015, which substantiated seven separate

13

allegations of abuse of authority by four separate NYPD officers in connection with the August 16, 2014 search of Ms. Lawrence's home.  (Nos. D756-D780.)  In addition, five instances of "other misconduct" were noted in the CCRB's September 2nd letter, including failure by two NYPD officers to prepare a stop and frisk report and failure by three other NYPD officers to prepare memo book entries.   A subsequent CCRB panel report found the allegation that Defendant "Michael Raso damaged Angela Lawrence's property" was "substantiated."  (No. D758)  Ms. Lawrence also produced medical records and a recording of a 911 call supporting her claims.

Defendants also assert in the Motion for Sanctions (Doc. No. 112, p. 20) that Mr. Leventhal "admits that he engaged in no inquiry whatsoever – falling woefully short of a 'reasonable inquiry' that the Federal Rules mandate – to determine the veracity of these manufactured photographs…."  This claim is factually inaccurate.  *First*, Mr. Leventhal *did* engage in a pre-filing inquiry, as discussed above and as required by FRCP 11, to determine that Ms. Lawrence's claims had merit.  *Second*, contrary to Defendants' *ipse dixit* and legally unsupported assertion, the "Federal Rules" do *not* require an attorney to determine "the veracity" of photographs produced in discovery.  Indeed, it is clear that this particular contention by Defendants in support of FRCP 11 sanctions has no merit because, as noted above, *FRCP 11 does not even apply to discovery disclosures.*

Defendants also assert that, because the photographs were produced some time after the initiation of litigation, "a reasonable attorney would have confirmed the date the photographs were taken and inquired as to why his client had not provided them earlier."  (Doc. No. 112, p. 20) ■

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████

By way of example, in <u>Advanced Video Tech. LLC</u>, 2015 U.S. Dist. LEXIS 122423, at *37, this Court declined to impose sanctions where counsel reasonably relied on his client's representations concerning the ownership of a patent which was the subject of the lawsuit. This Court noted that counsel had no reason to question the validity of the patent:

> "Absent some reason to question the validity of AVT's title – and there is nothing in the record tending to show that AVT ever raised this issue with its lawyers – the steps actually taken by counsel to confirm ownership were objectively reasonable under the circumstances, for the same reason that this case is truly exceptional: people do not ordinarily pay lawyers to bring lawsuits to enforce patents that they do not own."

<u>Id.</u>

Here, too, Mr. Leventhal had no reason to question the photographs' authenticity given the: 1) multiple findings of misconduct by the CCRB related to the incident in question; 2) Ms. Lawrence's medical records; 3) powerful evidence of a motive; 4) the contemporaneous recording of Ms. Lawrence's 911 call in which she discussed property damage to her home (purportedly depicted by the photographs in question); and 5) eyewitness testimony, including the emotional testimony of Ms. Lawrence. People do not ordinarily stage and photograph police break-ins where there is other real evidence to support the claims. Mr. Leventhal expended significant resources on this case, which he will never recover, and he would not have done so if he suspected foul play.

In addition, Mr. Leventhal reviewed the photographs and he was satisfied that they depicted damage consistent with Ms. Lawrence's prior descriptions of the damage. <u>See</u> <u>Mizrahi v. Network Recovery Servs.</u>, 1999 U.S. Dist. LEXIS 22145, at *13 (E.D.N.Y. Nov. 5, 1999) (with respect to files received by attorney for debt collection work, approving review of files by paralegals and

noting that "this is the kind of case in which an attorney could reasonably rely on the information supplied by the client without any in-depth review"); Goldenberg v. St. Barnabas Hosp., 2005 U.S. Dist. LEXIS 2730, at *20-21 (S.D.N.Y. Feb. 22, 2005) (denying FRCP 11 sanctions where plaintiff's counsel filed multiple inaccurate complaints based on discussions with his client). Under the circumstances, Mr. Leventhal's conduct was reasonable.

Accordingly, Defendants' Motion for Sanctions under FRCP 11 should be denied.

## II.   MR. LEVENTHAL COMPLIED WITH FRCP 11'S SAFE HARBOR PROVISIONS, PRECLUDING THE IMPOSITION OF FRCP 11 SANCTIONS AGAINST HIM.

Assuming that FRCP 11 applies, we respectfully submit that Mr. Leventhal complied in good faith with FRCP 11's safe harbor provisions, precluding the imposition of FRCP 11 sanctions against him.  Following his receipt of Defendants' September 11, 2017 Rule 11 safe harbor letter, on October 11, 2017, Mr. Leventhal filed a Motion with this Court seeking to be relieved as counsel to Ms. Lawrence, wherein he disavowed all prior statements made by him and/or Ms. Lawrence with respect to when and how the photographs were taken and related issues.  (Doc. No. 78)

Mr. Leventhal moved to withdraw 30 days after his receipt of Defendants' safe harbor letter (which was served by First Class Mail, providing him 24 days to comply – i.e., until October 5, 2017).  As this Court is aware, during that period of time, Mr. Leventhal retained your undersigned professional responsibility counsel; properly obtained a conflict waiver from his then-client, Ms. Lawrence; and diligently investigated this matter, ultimately moving to withdraw.  We respectfully submit that the *six-day* delay here was "reasonable" because Mr. Leventhal was required to navigate highly complex issues with respect to conflicts of interest and confidentiality, and filed his Motion to Withdraw only six days after the formal expiration of the safe harbor period.  Cf. In re Sony Corp. SXRD Rear Projection Tv Mktg., 268 F.R.D. 509, 520 (S.D.N.Y. 2010) (finding

16

that a *48-day* delay by counsel to strike allegations after learning at a deposition that they were unsupported was "unreasonable" and outside the scope of FRCP 11's safe harbor provision).

FRCP 11(c)(2) provides that a motion for sanctions under FRCP 11 "must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  The Advisory Committee notes to Subdivision "(A)," Adv. Comm. Notes, 1993 Amend., explain that "the timely withdrawal of a contention will protect a party against a motion for sanctions":

> "[A] party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation.  Under the former rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions."

We respectfully submit that Mr. Leventhal's good faith compliance with FRCP 11's safe harbor provision militates strongly against the imposition of sanctions against him.

### III.   FRCP 26 SANCTIONS SHOULD NOT BE IMPOSED BECAUSE MR. LEVENTHAL BELIEVED IN GOOD FAITH THAT HIS DISCOVERY RESPONSES WERE COMPLETE AND CORRECT AS OF THE TIME THEY WERE MADE, AND BECAUSE HE TIMELY CORRECTED THOSE RESPONSES.

Sanctions are not warranted pursuant to FRCP 26 because Mr. Leventhal believed in good faith that his discovery responses were complete and correct as of the time they were made, and because he timely corrected those responses when he learned additional facts.  Defendants' argument that the "reasonable inquiry" contemplated by FRCP 26(g) includes a review of metadata is without merit.  Mr. Leventhal performed a "reasonable inquiry," under the facts known to him then, by reviewing the photographs to make sure the depiction of damages was consistent with prior information provided to him by Ms. Lawrence.  Moreover, it is well-settled law that an

attorney is entitled to rely on his or her client's reasonable statements as to factual claims, and Ms.

Lawrence's description of events was objectively reasonable under the circumstances.

> FRCP 26(g)(1) provides that:

>> "Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name – or by the party personally, if unrepresented – and must state the signer's address, e-mail address, and telephone number.  By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:  (A) with respect to a disclosure, it is complete and correct as of the time it is made…."

> Separately, FRCP 26(e)(1) provides that an attorney may correct a prior disclosure:

>> "A party who has made a disclosure under Rule 26(a) – or who has responded to an interrogatory, request for production, or request for admission – must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court."

Defendants contend that, by failing to immediately review the metadata of the photographs

prior to turning those photographs over to Defendants in discovery, Mr. Leventhal engaged in

"grossly negligent" conduct warranting sanctions pursuant to FRCP 26.  (Doc. No. 112, pp. 17,

20)  Defendants' contention is without merit.  In Pension Comm. of the Univ. of Montreal Pension

Plan v. Banc of Am. Sec., LLC, 685 F. Supp. 2d 456, 464 (S.D.N.Y. 2010), a case cited by

Defendants, this Court explained that "[g]ross negligence has been described as a failure to

exercise even that care which a careless person would use."  That was not the case here.  Indeed,

Defendants themselves did not ask for metadata until months after the photographs were produced.

The photographs which Ms. Lawrence provided to Mr. Leventhal appeared to accurately

depict damage to Ms. Lawrence's apartment consistent with her prior descriptions of that damage,

and Ms. Lawrence was able to explain her delay in producing the images ███████████

███████████████████████████████████████████████.  Under the

facts known to him, Mr. Leventhal would not have reasonably been required to do a technical

examination of the photographs, and his failure to do so was not "grossly negligent."  Rather, Mr.

Leventhal was entitled to rely on Ms. Lawrence's reasonable representations.  Hadges, 48 F.3d at

1329.  Moreover, because Defendants did not initially request metadata in the September 30, 2016

request for production, Mr. Leventhal was not required to produce metadata at that time, see

Aguilar v. Immigration & Customs Enforcement Div., 255 F.R.D. 350, 357 (S.D.N.Y. 2008), and,

a fortiori, he would not have been required to immediately examine that metadata.

In a somewhat recent highly-publicized case, the court dismissed a lawsuit by Paul Ceglia

against Mark Zuckerberg which asserted an entitlement to 50% ownership of the multi-billion

dollar social media corporation Facebook.  Ceglia v. Zuckerberg, 2013 U.S. Dist. LEXIS 45500,

at *153 (W.D.N.Y. Mar. 26, 2013), aff'd Ceglia v. Zuckerberg, 600 F. Appx. 34, 35 (2d Cir. 2015).

A review of the metadata of the documents on which the lawsuit was based, including e-mails

copied into word documents, revealed that those documents were back-dated, included incorrect

time zone stamps, and contained inconsistent formatting.  Id. at 153-160.  The court found that:

> "[T]he MS Word document 'Mark emails july04.doc' contains the
> text of three supporting e-mails supposedly sent and received
> between April 6, 2004 and July 22, 2004, yet the metadata
> associated with the document establishes two deleted copies of the
> document have 'file created,' 'last modified,' and 'last accessed'
> timestamps of October 21, 2003, which is a date earlier than the e-
> mails purportedly were sent in July 2004. …
>
> As with the 'Mark emails july04.doc' file, a document that was
> created, last modified, and last accessed on October 21, 2003, could
> not contain authentic e-mails from November or December 2003, as
> indicated by the title 'Mark harvard emails up to Dec.doc.'  Rather,
> the only plausible explanation for the timestamp inconsistencies is

> that the files were saved onto the floppy disks using a computer
> whose system clock had been backdated."

Ceglia, 2013 U.S. Dist. LEXIS 45500, at *154.

Neither the District Court nor the Second Circuit suggested that the law firms representing Paul Ceglia (including DLA Piper and Kasowitz, Benson, Torres & Friedman) had a duty to review the metadata prior to turning the files over in discovery.  Moreover, the attorneys in the Ceglia case were found to have acted reasonably because, although there was an allegation that the documents were fraudulent, the client denied the misconduct and – as here – there was other evidence in the case (specifically, a temporary restraining order which had been granted) on which the attorneys relied.  Facebook, Inc. v. DLA Piper LLP (US), 134 A.D.3d 610, 615 (App. Div. 1st Dept. 2015) (finding the prosecution of the case was appropriate because there was "no conclusive proof of Ceglia's fraud that rendered their representation deceptive").  Here, too, Mr. Leventhal relied on the CCRB records, the medical records, the 911 telephone call, and his conversations with Ms. Lawrence, and he reasonably believed that the case had merit.

Separately, Mr. Leventhal *complied* with FRCP 26(e)(1)(A) by timely correcting his prior representations in his October 11, 2017 Motion to this Court seeking to be relieved as counsel to Ms. Lawrence, wherein he disavowed all prior statements made by him and/or Ms. Lawrence with respect to when and how the photographs were taken and related issues.  (Doc. No. 78)

Accordingly, Defendants' Motion for Sanctions under FRCP 26 should be denied.

    **IV.    FRCP 37 SANCTIONS SHOULD NOT BE IMPOSED BECAUSE MR. LEVENTHAL ACTED ETHICALLY WITH RESPECT TO HIS DISCOVERY OBLIGATIONS AND DID NOT ENGAGE IN WILLFUL NON-COMPLIANCE.**

FRCP 37 sanctions should not be imposed because Mr. Leventhal acted ethically with respect to his discovery obligations and did not engage in willful non-compliance.  In the context

of Rule 37 sanctions, District Courts "must consider several factors when deciding whether to impose sanctions, such as":  "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." S. New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010). "[S]anctions must be weighed in light of the full record in the case." Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1068 (2d Cir. 1979).

Mr. Leventhal's failure to examine the metadata of the photographs is not tantamount to willful discovery "non-compliance" for which attorneys have been sanctioned pursuant to FRCP 37. Willful non-compliance is routinely found where a party has "repeatedly failed to ... produce documents … in violation of the district court's orders." Consumer Fin. Protection Bur. v. NDG Fin. Corp., 2018 U.S. Dist. LEXIS 41339, at *12 (S.D.N.Y. Mar. 12, 2018); see, e.g., Robertson v. Dowbenko, 443 F. Appx. 659, 661 (2d Cir. 2011) (willfulness found where defendant failed to respond to discovery requests and court orders for two years); Battiste-Downie v. Covenant House, 471 F. Appx. 78, 79 (2d Cir. 2012) (willfulness found where plaintiff "repeatedly defied discovery orders, despite the court's explicit instructions on several occasions that she was to respond to specific demands or face sanctions"); Coty Inc. v. Excell Brands, LLC, 2016 U.S. Dist. LEXIS 170817, at *1-4 (S.D.N.Y. Dec. 9, 2016) (willfulness found where party produced two Rule 30[b][6] witnesses who did not have personal knowledge about three designated areas of testimony and who had not been prepared to testify on those topics despite the Court's warnings); Doe v. Delta Airlines, Inc., 2015 U.S. Dist. LEXIS 22739, at *20 (S.D.N.Y. Feb. 25, 2015) (willfulness found based on attorney's "stark, persistent, and unjustified disobedience"). *These cases stand in stark contrast to the conduct of Mr. Leventhal.*

Here, Mr. Leventhal's supposed "non-compliance" consisted of his failure to review the metadata of the photographs.  However, Mr. Leventhal did not *willfully* fail to comply with any court order or discovery request which required him to review such metadata.  Under the facts known to him, Mr. Leventhal would not have reasonably been required to review the metadata, and he did not otherwise engage in any "persistent" or "unjustified disobedience."  As noted above, because Defendants did not request metadata in the initial September 30, 2016 request for production, Mr. Leventhal was not required to produce metadata for the photographs at that time, see Aguilar, 255 F.R.D. at 357, and, *a fortiori*, he was not required to immediately examine the metadata.  Defendants identify no authority which would have required Mr. Leventhal to review metadata, and Mr. Leventhal has acknowledged that he did not know about the concept of metadata at the time he produced the photographs to Defendants.

In support of FRCP 37 sanctions, Defendants rely in the Motion for Sanctions (Doc. No. 112, pp. 26-27) on Greene v. Netsmart Tech. Inc., 2011 U.S. Dist. LEXIS 59710, at *23 (E.D.N.Y. Feb. 28, 2011), where an attorney was sanctioned for negligent failure to preserve evidence under the Zubulake doctrine.  In particular, the attorney's client in Greene destroyed handwritten notes, deleted audio recordings, and withheld discoverable information.  2011 U.S. Dist. LEXIS 59710, at *11-14.  Mr. Leventhal, on the other hand, ███████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████.

Accordingly, Defendants' Motion for Sanctions under FRCP 37 should be denied.

### V.    ATTORNEYS' FEES AND COSTS SHOULD NOT BE ASSESSED AGAINST MR. LEVENTHAL BECAUSE HE ACTED IN GOOD FAITH RELIANCE ON HIS CLIENT.

Attorneys' fees and costs should not be assessed against Mr. Leventhal because he acted in good faith reliance on his client, and because the action had merit even without the photographs. Defendants' assert, without citation to any authority, that they should be awarded $239,775.00 in attorneys' fees and $1,657.85 in costs "for defending this action after plaintiff's production, and attorney's use of, manufactured evidence." (Doc. No. 112, p. 23) Defendants cite no authority for the proposition that Mr. Leventhal, who had no knowledge (and still has no knowledge) of the fact that the photographs were *supposedly* staged, and who promptly disavowed the representations relating to those photographs, should be sanctioned for his client's *supposed* misconduct. Cf. Mir, 2015 U.S. Dist. LEXIS 39511, at *61.  Indeed, there has been no actual finding that the photographs in question are not authentic.  In light of the fact that Mr. Leventhal did not violate FRCP 11, 26 or 37, there is no basis to impose attorneys' fees or costs.  Mr. Leventhal has already paid a heavy price in this case by having to withdraw after investing significant resources over several years into the case.

Separately, the bare-bones request for attorneys' fees and costs in the Motion for Sanctions (Doc. No. 12, p. 23) does not satisfy the notice requirements for the imposition of sanctions because it does not "apprise [Mr. Leventhal] of the specific conduct alleged to be sanctionable." Nuwesra v. Merrill Lynch, Fenner & Smith, Inc., 174 F.3d 87, 92 (2d Cir. 1999).

In the same vein, Defendants' Motion for Sanctions (Doc. No. 112, pp. 26-27) argues that "Mr. Leventhal and plaintiff's misleading and false statements about the purported custodian of the phones used to take the pictures – and the fact that there is apparently a third phone with relevant information that was never produced – is an example of egregious misconduct that should

not go unpunished." This bombastic statement is completely unsupported by fact or law. Suffice it to say that this claim is without merit and, to the extent Mr. Leventhal made any inaccurate statements, he promptly disavowed them upon learning additional facts.

Accordingly, Defendants' application for attorneys' fees and costs should be denied.

## **CONCLUSION**

In sum, Defendants' Motion for Sanctions against Mr. Leventhal is without merit. Mr. Leventhal conducted a reasonable inquiry into the merits of Ms. Lawrence's case and believed that his "factual contentions ha[d] evidentiary support" as required by FRCP 11(b)(3); Mr. Leventhal performed a reasonable inquiry by reviewing the photographs to make sure the depiction of damages was consistent with prior information provided to him by Ms. Lawrence; Mr. Leventhal satisfied his remedial obligations under FRCP 11's safe harbor provision, and under FRCP 26(e), by disavowing his and Ms. Lawrence's prior statements concerning the photographs; and Mr. Leventhal's failure to examine the metadata is not tantamount to willful discovery "non-compliance" for which attorneys have been sanctioned under FRCP 37.

For the reasons set forth above and in Mr. Leventhal's supporting Declaration, we respectfully submit that Defendants' Motion for Sanctions against Mr. Leventhal should be denied.

Dated:  New York, New York
        May 15, 2018

                                Respectfully submitted,


                                s/Michael S. Ross
                                Michael S. Ross, Esq. (MSR-3626)
                                Law Offices of Michael S. Ross
                                *Counsel to Jason L. Leventhal, Esq.*
                                60 East 42nd Street, 47th Floor
                                New York, New York 10165
                                Tel.:  (212) 505-4060
                                Fax:  (212) 505-4054
                                michaelross@rosslaw.org


Eugene Gormakh, Esq.
*Of Counsel*