UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
ANGELA LAWRENCE,          :
                          :
         Plaintiff,       :
                          :          15cv8947
     -against-            :
                          :          OPINION & ORDER
                          :
THE CITY OF NEW YORK, *et al.*,  :
                          :
         Defendants.      :
                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, Senior United States District Judge:

  The City of New York, Daniel Nunez, Daniel Beddows, Juan Rodriguez, Jens Maldonado, John Anzelino, and Michael Raso (together, "Defendants") move for sanctions against Angela Lawrence and her former counsel Jason Leventhal stemming from their production of 67 photographs purporting to show the immediate aftermath of the events at issue in this action. Defendants contend that sanctions are warranted under Federal Rules of Civil Procedure 11, 26, and 37, and seek dismissal with prejudice and attorneys' fees. For the reasons that follow, Defendants' motion is granted in part and denied in part, and this case is dismissed.

## BACKGROUND

  This Opinion & Order showcases the importance of verifying a client's representations. In November 2015, Leventhal filed this civil rights action on behalf of Lawrence. (See Compl., ECF No. 1.) The complaint alleged that in August 2014, NYPD officers entered Lawrence's home without a warrant, pushed her to the floor, damaged her property, and stole more than $1,000 in cash. (Am. Compl., ECF No. 17, ¶¶ 17, 22.)

  In September 2016, Lawrence provided photographs that she claimed depicted the

condition of her apartment several days after the incident. (Decl. of Jason L. Leventhal, Esq., in Opp. to Defs.' Mot. for Sanctions & Attorneys' Fees & Costs, ECF No. 123 ("Leventhal Decl.") ¶¶ 15–16.) Leventhal accepted his client's representations and after reviewing the photographs, saved them to a PDF, Bates-stamped them, and produced them to Defendants. (Leventhal Decl. ¶ 17; Decl. of Evan F. Jaffe in Supp. of Defs.' Mot. for Sanctions & Attorneys' Fees, ECF No. 113 ("Jaffe Decl."), Ex. F.). At that time, Leventhal was unfamiliar with electronically stored metadata and "did not doubt [that] the photographs were taken contemporaneously with the occurrence of the damage." (Leventhal Decl. ¶ 15.)

During a December 2016 deposition, Lawrence testified that her son or a friend took the photographs two days after the incident. (Jaffe Decl., Ex. H ("Dec. Dep."), at 197:19–198:18, 203:3:10, 204:14.) In a subsequent deposition in April 2017, Lawrence asserted that she had taken most of the pictures, that her son had taken a few, and that none of them were taken by the previously described friend. (Jaffe Decl., Ex. I ("Apr. Dep."), at 265:5–11, 266:19–24, 273:12–14, 301:25–302:4, 306:10–14.) At that juncture, Leventhal believed his client had memory problems but did not believe she was testifying falsely. (Leventhal Decl. ¶ 21.) In view of Lawrence's conflicting testimony, Defendants requested the smartphones which Lawrence claimed were used to take the photos. (Jaffe Decl. ¶ 21.) In August 2017, Leventhal objected, but agreed to produce the photographs' native files, which included metadata. (Jaffe Decl. ¶ 29.)

When Defendants checked the photographs' metadata, they learned that 67 of the 70 photographs had been taken in September 2016—two years after the incident and immediately before Lawrence provided them to Leventhal. (Jaffe Decl. ¶ 33.) In September 2017, Defendants sent a Rule 11 safe-harbor letter to Leventhal. (Jaffe Decl. ¶ 34; Ex. N.)

In October 2017, Leventhal moved to withdraw as counsel, asserting that "based upon facts of which [he] was not aware . . . [he] hereby disavow[ed] all prior statements made [regarding] the photographs." (See Aff. of Jason Leventhal, ECF No. 78-1, at 3.) At an October 2017 conference, Leventhal's ethics counsel represented that at the time of production, Leventhal "did not believe or have reason to believe that there was any question about the date or provenance of the photographs." (Jaffe Decl., Ex. Q ("Oct. Hr'g Tr."), at 3:23–25.) Ethics counsel also stated that other events now compelled Leventhal to withdraw. (Oct. Hr'g Tr., at 5:3–16.) While Leventhal's motion was pending, Lawrence terminated Leventhal's representation. (Letter, ECF No. 94.)

In December 2017, this Court granted Leventhal's motion to withdraw and afforded Lawrence two months to secure new counsel. (ECF Nos. 97 & 98.) Lawrence was unable to engage a new lawyer and appeared pro se. By letter dated February 20, 2018, Lawrence claimed she provided the photographs to her attorney by accident because she had an eye infection. (ECF No. 105.) At a status conference, this Court advised Lawrence that "[t]he issue here is whether the photographs that you submitted actually depicted the damages at the time or whether it was all staged by you and then given to your attorney." (Feb. Hr'g Tr., at 9:13–16.) Further, this Court informed Lawrence that "if evidence comes out on [Defendants'] motion that in fact this is all fabricated, at a minimum, [the Court] may be duty bound to refer it to the United States attorney," that her case could be dismissed, and that she "may be subject to substantial monetary penalties." (Feb. Hr'g Tr., at 9:18–25.) Lawrence elected to proceed.

In the wake of Defendants' motion for sanctions, Lawrence forwarded numerous documents to this Court and attributed her production of the photographs to mental illness. (See

3

Opposing Mot. for Sanctions & Attorneys Fees, ECF No. 115 ("Lawrence Opp. Brief"), at *1.[1]) She also claims that her medications prevented her from testifying truthfully during depositions. (Lawrence Opp. Brief at *1.) Lawrence's medical records evince a history of mental illness. (See, e.g., Lawrence Supp. Brief, at *185 & Ex. 1, at *2, *16–17, *23.) Most recently, Lawrence amended her deposition testimony and now contends that the photographs were taken by her grandchild for a book report. (Lawrence's Amended Answers to Deposition, ECF No. 132-1, at *76.)

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide for sanctions based on litigation misconduct. Courts also "possess certain inherent powers, not conferred by rule or statute . . . to fashion an appropriate sanction for conduct which abuses the judicial process." Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017) (citation and marks omitted). Courts have the inherent power to correct a fraud upon the court. Fraud upon the court exists where a litigant attempts to "improperly influence[] the trier" of fact, "lies to the court and h[er] adversary intentionally, repeatedly, and about issues that are central to the truth finding process," or "knowingly submit[s] fraudulent documents to the Court." Passlogix, Inc. v. 2FA Tech., Inc., 708 F. Supp. 2d 378, 395 (S.D.N.Y. 2010) (citation and marks omitted). A district court has broad discretion in fashioning sanctions under its "inherent power to manage its own affairs." Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106–07 (2d Cir. 2002).

Discovery sanctions serve broad purposes, including: (1) to ensure "that a party will not benefit from its own failure to comply"; (2) "as specific deterrents [to] seek compliance

---

[1] Citations to materials submitted by Lawrence refer to their ECF pagination.

with the particular order issued"; and (3) "as a general deterrent effect on the case at hand and on other litigation." Update Art, Inc. v. Modiin Publ'g, Ltd., 843 F.2d 67, 71 (2d Cir. 1988). In determining sanctions based on discovery misconduct, courts consider willfulness, duration of non-compliance, whether the non-compliant party had been warned of the consequences of non-compliance, and the efficacy of lesser sanctions. Dragon Yu Bag Mfg. Co. v. Brand Sci., LLC, 282 F.R.D. 343, 345 (S.D.N.Y. 2012).

"[D]ismissal is a harsh remedy, not to be utilized without a careful weighing of its appropriateness," and should only be employed when a court is "sure of the impotence of lesser sanctions." Dodson v. Runyon, 86 F.3d 37, 39, 42 (2d Cir. 1996) (citation and marks omitted). Nonetheless, "when a party lies to the court and h[er] adversary intentionally, repeatedly, and about issues that are central to the truth-finding process, it can fairly be said that [s]he has forfeited h[er] right to have h[er] claim decided on the merits." McMunn v. Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002).

## DISCUSSION

I. Rule 11

Rule 11 states that by signing a pleading, motion, or other paper, an attorney certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the document is submitted for a proper purpose, the legal claims are nonfrivolous, and "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). "Rule 11 imposes a duty on every attorney to conduct a reasonable pre-filing inquiry into the evidentiary and factual support for [a] claim . . . ." Capital Bridge Co. v. IVL Tech., Ltd., 2007 WL 3168327, at *10 (S.D.N.Y. Oct. 26, 2007). It serves "to deter baseless

5

filings." Gal v. Viacom Int'l, Inc., 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) (citation omitted).

A pleading violates Rule 11 where "a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law." W.K. Webster & Co. v. Am. President Lines, Ltd., 32 F.3d 665, 670 (2d Cir. 1994). An attorney also has an obligation not to "reaffirm[] to the court and advocat[e] positions contained in [prior] pleadings and motions after learning that they cease to have merit." Fed. R. Civ. P. 11 advisory committee's note. Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions . . . ." Fed R. Civ. P. 11(d).

In enforcing Rule 11, a court may "impose an appropriate sanction on any attorney, law firm, or party that violated the rule." Fed. R. Civ. P. 11(c)(1). A represented party may be sanctioned if she "had actual knowledge that the filing of the papers constituted wrongful conduct, e.g. the papers made false statements or were filed for an improper purpose." Ilkowitz v. Durand, 2018 WL 1595987, at *19 (S.D.N.Y. Mar. 27, 2018) (citation omitted). A court "resolves all doubts in favor of the signer." Oliveri v. Thompson, 803 F.2d 1265, 1275 (2d Cir. 1986). "Courts impose Rule 11 sanctions with discretion and caution." Robeldo v. Bond No. 9, 965 F. Supp. 2d 470, 478 (S.D.N.Y. 2013).

Defendants attempt to cast what occurred here as conduct sanctionable under Rule 11. They contend that Leventhal failed to adequately investigate Lawrence's claims before filing this action and failed to drop those claims after learning that Lawrence had provided fraudulent photographs and given false testimony. But Rule 11 does not apply to this situation. Leventhal produced documents in discovery that turned out to be fraudulent. Defendants' sanctions motion rests entirely on that production. "These incidents are not sanctionable under Rule 11 because

6

they arose in the context of discovery and thus are not within the scope of Rule 11." Moeck v. Pleasant Valley Sch. Dist., 844 F.3d 387, 391 n.8 (3d Cir. 2016) (citing Fed. R. Civ. P. 11(d)).

Further, the record does not support Defendants' contention that it was unreasonable for Leventhal to bring this action. "[U]nder Rule 11, an attorney has an affirmative duty to make reasonable inquiry into the facts and the law." In re Austr. & N.Z. Banking Grp. Ltd. Sec. Litig., 712 F. Supp. 2d 255, 263 (S.D.N.Y. 2010) (citation and marks omitted). Here, Leventhal made such an inquiry. Although Defendants allege the photographs constitute the only evidence of Lawrence's claims, Leventhal also: (1) requested Lawrence's medical records, which showed that she sought treatment for difficulty sleeping, nightmares, anxiety, depression, and weight loss from the alleged incident, (2) reviewed Civilian Complaint Review Board records regarding the incident and certain police officers' prior conduct, and (3) interviewed both Lawrence and her son. (See Leventhal Decl. ¶¶ 6–7, 11–14.) This investigation was sufficient. "[A]n attorney is entitled to rely on the objectively reasonable representations of the client." Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1329–30 (2d Cir. 1995); Optical Commc'ns Grp., v. M/V AMBASSADOR, 938 F. Supp. 2d 449, 465 (S.D.N.Y. 2013) (denying sanctions despite client's "suspect" claims).

Accordingly, the record does not show that Leventhal failed to perform "an inquiry reasonable under the circumstances," Fed. R. Civ. P. 11(b), nor that Lawrence's claims were "utterly lacking in support," In re Sept. 11th Liab. Ins. Coverage Cases, 243 F.R.D. 114, 124 (S.D.N.Y. 2007) (citation omitted); see Goldenberg v. St. Barnabas Hosp., 2005 WL 426701, at *7 (S.D.N.Y. Feb. 23, 2005) (denying sanctions where "there was a reasonable basis for plaintiff's counsel to have believed that [plaintiff's] allegations were grounded in fact when

7

he filed the . . . complaint"); Almeciga v. Ctr. for Investigative Reporting, Inc., 185 F. Supp. 3d 401, 427 (S.D.N.Y 2016) ("Rule 11 sanctions may not be imposed unless a particular . . . allegation is utterly lacking in support," not "where the evidentiary support is merely weak." (citations, marks, and alterations omitted).)

This Court recognizes that the date the photographs were created became apparent only after Leventhal filed suit and Lawrence testified. "When a district court examines the sufficiency of the investigation of facts and law, it is expected to avoid the wisdom of hindsight . . . ." Bradgate Assocs., Inc. v. Fellows, Read & Assocs., Inc., 999 F.2d 745, 752 (3d Cir. 1993) (citation and marks omitted); see also Healey v. Chelsea Res., Ltd., 947 F.2d 611, 625 (2d Cir. 1991) (describing that a court must ascertain an attorney's knowledge at the time the pleading was signed). Even if Lawrence contradicted herself in her deposition, "submission of inconsistent statements alone is insufficient to establish that a statement was false, or was filed for an improper purpose." Brown v. Artus, 647 F. Supp. 2d 190, 206 (N.D.N.Y. 2009). Based on the evidence supporting Lawrence's claims, including the 911 call produced in discovery, this Court cannot conclude that Leventhal had a duty to withdraw Lawrence's claims. Cf. Galin v. Hamada, 283 F. Supp. 3d 189, 202 (S.D.N.Y. 2017) (sanctioning plaintiff after discovery revealed that he had no viable claim).

For similar reasons, Rule 11 does not apply to Lawrence's conduct. "Where it is the party . . . and not the attorney, that is the target of Rule 11 motion, a subjective good faith test applies." Quadrozzi v. City of N.Y., 127 F.R.D. 63, 79 (S.D.N.Y. 1989). The evidence demonstrates that Lawrence or someone on her behalf staged photographs and that she represented them to be accurate depictions of her apartment at the time of the incident. But that

8

does not compel the conclusion that the August 2014 incident did not in fact occur. Thus, this Court cannot conclude that Lawrence "misl[ed] [her] attorney as to . . . the purpose of a lawsuit." See Mir v. Bogan, 2015 WL 1408891, at *21 (S.D.N.Y. Mar. 27, 2015) (citation omitted). While Lawrence committed egregious discovery misconduct, Rule 11 sanctions are unavailable.

II.     Rule 26

Rule 26 provides a parallel to Rule 11 for productions made in discovery. Under Rule 26(g), an attorney's signature on a discovery response or objection certifies that after reasonable inquiry, the production is: (1) "complete and correct as of the time it is made"; (2) consistent with existing law; (3) "not interposed for any improper purpose"; and (4) not unduly burdensome. Fed. R. Civ. P. 26(g)(1). Violation "without substantial justification" requires a court to "impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3). "Rule 26(g) imposes on counsel an affirmative duty to engage in pretrial discovery responsibly" and to "stop and think about the legitimacy of a discovery request, a response thereto, or an objection." Metro. Opera Ass'n, Inc. v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union, 212 F.R.D. 178, 219 (S.D.N.Y. 2003) (citation and emphasis omitted).

In determining sanctions under Rule 26, a court considers whether the attorney's inquiry before a production "was objectively reasonable under the circumstances." Kiobel v. Royal Dutch Petroleum Co., 2009 WL 1810104, at *2 (S.D.N.Y. June 25, 2009). "In making her inquiry, an attorney may rely, when appropriate, on representations by her client or by other attorneys." Kiobel, 2009 WL 1810104, at *2. "Ultimately, what is reasonable is a matter for the

9

court to decide on the totality of the circumstances." Fed. R. Civ. P. 26 advisory committee's note.

Defendants argue that Lawrence provided the photos nearly a year after this litigation commenced without ever mentioning them previously. However, as Leventhal explained in camera, Lawrence told him about photographs depicting damage to her apartment from the very beginning, but claimed that she was not "tech-savvy" and did not know how to reproduce them. (Leventhal Decl. ¶ 9.) Leventhal repeatedly attempted to gain access to the devices containing the photos. (Leventhal Decl. ¶ 9.) Further, some of the photographs appear to show damage to Lawrence's apartment consistent with her testimony, including a mattress and couch torn open, and damage to other items. Therefore, a reasonable lawyer would not have doubted that they showed what Lawrence claimed. Finally, Leventhal explains that at the time he produced the photos he was unfamiliar with the process for checking a digital photograph's metadata, which entails right-clicking it and navigating to its properties. (Leventhal Decl. ¶ 15.)

Based on these facts, Leventhal's production of the photos may have been careless, but was not objectively unreasonable. Cf. Johnson v. BAE Sys., Inc., 307 F.R.D. 220, 226 (D.D.C. 2013) (sanctioning attorney for producing doctored medical records without any inspection or inquiry whatsoever). On the other hand, it is clear that Lawrence, or someone acting on her behalf, created these photographs to bolster her claims, and then she falsely testified about them. Accordingly, sanctions under Rule 26 are appropriate. See Fed. R. Civ. P. 26(g)(3) (sanctions under Rule 26 apply to both the signer and "the party on whose behalf the signer was acting"). But as described below, Lawrence's conduct is more properly construed as an attempted fraud on this Court, and is therefore analyzed under that standard.

10

III.  Rule 37

Federal Rule of Civil Procedure 37 governs a party's failure to obey a discovery order or comply with discovery requests.  See Fed. R. Civ. P. 37.  It largely functions to "ensure that a party will not be able to profit from its own failure to comply" and "to secure compliance with the particular order at hand."  Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979).  In determining sanctions under Rule 37, a court considers "willfulness or bad faith of the noncompliant party; (b) the history, if any, of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party has been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party."  Metro. Opera Ass'n, 212 F.R.D. at 220 (citation and marks omitted).

Rule 37 does not apply to this situation.  This rule "provides generally for sanctions against parties or persons unjustifiably resisting discovery."  Fed. R. Civ. P. 37 advisory committee's note; see Nieves v. City of N.Y., 208 F.R.D. 531, 535 (S.D.N.Y. 2002) (explaining that Rule 37 seeks in part to "obtain[] compliance with discovery orders").  Here, Leventhal did not fail to comply with discovery orders, to supplement an earlier response, or to preserve electronically stored information.  Further, there is no showing that his actions were willful or part of a pattern of noncompliance.  "Willful non-compliance is routinely found . . . where a party has repeatedly failed to produce documents in violation of the district court's orders."  Doe v. Delta Airlines, Inc., 2015 WL 798031, at *8 (S.D.N.Y. Feb. 25, 2015) (citation omitted).  Instead, Leventhal was unaware of Lawrence's actions and took corrective action after learning that the photographs were taken two years later.  Defendants have not shown that Leventhal handled his discovery obligations in an unethical or willfully non-compliant manner.

11

Defendants also contend that Leventhal should have corrected the record before seeking leave to withdraw. But Leventhal spoke numerous times with Lawrence to understand what had happened and engaged ethics counsel to advise him. (Leventhal Decl. ¶¶ 27–41.) Leventhal also disavowed his prior representations concerning the photographs. It appears that Leventhal's need to withdraw precluded him from taking certain steps such as voluntarily dismissing some or all of Lawrence's claims.

IV.     Inherent Power of Court

"Beyond the powers conferred expressly by rule and statute, a federal court has inherent power to sanction a party for bad faith litigation conduct." Cerruti 1881 S.A. v. Cerruti, Inc., 169 F.R.D. 573, 582–83 (S.D.N.Y. 1996); see also Briese Lichttechnik Vertriebs GmbH v. Langton, 2011 WL 280815, at *8 (S.D.N.Y. Jan. 10, 2011) ("[E]ven in the absence of [a court] order the court may impose sanctions for discovery misconduct as an assertion of its inherent powers.").

"Our judicial system generally relies on litigants to tell the truth . . . ." McMunn, 191 F. Supp. 2d at 445. Therefore, "[f]raud upon the court . . . seriously affects the integrity of the normal process of adjudication." Hargrove v. Riley, 2007 WL 389003, at *11 (E.D.N.Y. Jan. 31, 2007) (citation and marks omitted). "[T]ampering with the administration of justice . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society." Shangold v. Walt Disney Co., 2006 WL 71672, at *4 (S.D.N.Y. Jan. 12, 2006) (citing Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246 (1944)).

12

A litigant must prove fraud upon the court by clear and convincing evidence. Passlogix, 708 F. Supp. 2d at 393. Defendants must establish the opposing party "has acted knowingly in an attempt to hinder the fact finder's fair adjudication of the case." McMunn, 191 F. Supp. 2d at 445 (citation omitted). A court also considers (1) if the misconduct was performed intentionally and in bad faith; (2) whether it prejudiced the injured party; (3) if there is a pattern of misbehavior; (4) whether and when the misconduct was corrected; and (5) whether it is likely to continue. Passlogix, 708 F. Supp. 2d at 394.

The creation of staged photos was the beginning of a sustained effort by Lawrence to mislead Defendants and this Court. A brief recapitulation is necessary. Lawrence told Leventhal early on that she had photos of her apartment on a cellphone. (Leventhal Decl. ¶ 9.) In September 2016, she provided photos to her attorney and represented to him that they were taken days after the incident. (Leventhal Decl. ¶ 15.) In her December 2016 deposition, she testified that the photos were taken by her son or a friend days after the incident. (Dec. Dep., 197:19–198:18, 203:3:10, 204:14.) She also testified that she was not suffering from any mental condition at the time of her deposition. (Dec. Dep., 9:20–23.) In April 2017, Lawrence reiterated that the photos were taken immediately after the incident, but now claimed to have taken most of them herself. (Apr. Dep., 265:8–10; 266:19–20.) It was only after Defendants discovered the metadata that Lawrence acknowledged that the photos were taken in 2016.

Lawrence's attempts to explain the photographs and her deposition testimony continue a pattern of evasion and untruths. First, she asserted the production was caused by conjunctivitis, and presented her prescription for eye drops. (ECF No. 105.) Lawrence's conjunctivitis does not explain the creation of 67 doctored photographs or her false statements in

13

two depositions. Only after this Court rejected that explanation did Lawrence contend that the production was due to mental illness. (See Lawrence Opp. Brief.) However, after providing that explanation, Lawrence submitted further documents in which she amended her deposition testimony and now contends that the photos were taken by her grandson as part of a school project. (Lawrence's Amended Answers to Deposition, ECF No. 132-1, at 76.[2])

These shifting explanations are as troubling as the photographs themselves. This Court does not know how it can credit any of Lawrence's explanations. In considering the factors relevant to sanctions, most, if not all, support a harsh sanction. First, it is clear that the photos were intentionally staged. Photographs do not create themselves, and Lawrence's belated attempts to explain them are not worthy of belief. From this Court's review of the photographs, it is clear that Lawrence or someone on her behalf intentionally staged scenes of her apartment, including ripped furniture, a couch turned over, a broken air-conditioner, and disassembled stereos. Whether Lawrence personally created the photographs or not, she embraced them and willingly testified that they accurately depicted the condition of her apartment as of August 2014. Second, her actions prejudiced Defendants. Third, her pattern of misbehavior appears likely to continue. See DAG Jewish Directories, Inc. v. Y&R Media, LLC, 2010 WL 3219292, at *5 (S.D.N.Y. Aug. 12, 2010) (intentional fraud on court and subsequent lies to cover it up showed that "further misconduct [was] likely"); McMunn, 191 F. Supp. 2d at 462 (litigant's "lies and misconduct will almost certainly continue in the future if this action is permitted to go forward . . . nullifying any chance for a fair adjudication of the merits").

Further, this Court warned Lawrence of the repercussions of her actions. In

---

[2] Although this letter is dated April 23, 2018, this Court did not receive it until June 4, 2018.

December 2017, it informed her that "this is a very serious and grave matter with respect to the production of th[e] photographs, the circumstances surrounding the creation of th[e] photographs, and related matters." (Dec. 8, 2017 Hr'g Tr., at 22:10–13.) Again, in February, this Court told her that if the photos were staged by her, it would be a "very, very serious charge." (Feb. Hr'g Tr., at 9:16.)

Finally, Lawrence's "misconduct did not concern a peripheral or an incidental matter[.] . . . Rather, [it] goes to the heart of the case by making it apparent that defendants can rely only on fraudulent or defective records . . . ." Cerruti 1881, 169 F.R.D. at 583. "[A]ll litigants, including pro ses, have an obligation to comply with court orders. When they flout that obligation, they, like all litigants, must suffer the consequences of their actions." McDonald v. Head Crim. Court Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988).

Lawrence's deceptive conduct and shifting excuses have completely undermined her credibility. This Court has no way of knowing what story Lawrence would offer if this case went to trial. See Hargrove, 2007 WL 389003, at *11 (severe sanctions were warranted based on plaintiff's intentional document forgeries, which were submitted in discovery and again as exhibits to his motion). Any sanction less than dismissal, "such as a jury instruction, would be ineffective." See McMunn, 191 F. Supp. 2d at 462. And "merely excluding the fabricated evidence would not only fail to address . . . [P]laintiff's other misconduct . . . but would also send the [P]laintiff, and future litigants like [her], the message that they have everything to gain, and nothing to lose, by continuing to submit fabricated evidence." Slate v. Am. Broad. Cos., Inc., 941 F. Supp. 2d 27, 52 (D.D.C. 2013) (citation and marks omitted) ("Dismissal is particularly appropriate where a plaintiff seeks to enhance the merits of her case with fabricated

15

evidence and fictionalized testimony.").

This Court has considered Lawrence's explanation that the photographs were produced because of her mental illness. (See Lawrence Supp. Brief, at *1.) Courts consider mental illness as a factor in determining sanctions. See Pritchard v. Dow Agro Sci., 2009 WL 1813145, at *10 (W.D. Pa. June 25, 2009). Some courts have chosen to lessen sanctions based on a litigant's mental illness. See Voltz v. Chrysler Grp. LLC—UAW Pension Plan, 63 F. Supp. 3d 770, 785 (N.D. Ohio 2014) ("[A] litigant's mental illness weighs against certain discovery sanctions, like entry of default."); Nowia-Pahlavi v. Haverty Furniture Cos., Inc., 2009 WL 1393475, at *4 (M.D. Fla. May 18, 2009) (finding it "inappropriate to sanction litigants for mental illness"). Others have dismissed a case despite a litigant's mental illness. See Azkour v. Maucort & Little Rest Twelve, Inc., 2018 WL 502674, at *9 (S.D.N.Y. Jan. 18, 2018) (finding plaintiff's conduct willful and holding that despite his mental illness, he must bear the consequences of his actions); Lundahl v. Hawkins, 2009 WL 2461220, at *7 (W.D. Tex. Aug. 10, 2009), report and recommendation adopted by 2009 WL 3617518 (W.D. Tex. Oct. 27, 2009) (recommending plaintiff be sanctioned despite that her actions "may have been influenced by [her] mental illness" because she knew she was not acting "in good faith").

Lawrence's mental illness, while a mitigating factor, does not excuse her actions. Memory lapse does not explain manufactured exhibits and perjured testimony. This Court cautioned Lawrence that she needed to provide a credible explanation for her actions. (Feb. Hr'g Tr., at 13:1–4; 13:10–12.) She has failed to do so. As this Court stated in February, Lawrence may not be a lawyer, but she "know[s] the difference between giving honest testimony and providing honest exhibits as opposed to giving perjured testimony and manufacturing exhibits . .

16

. [b]ecause that's the difference between right and wrong." (Feb. Hr'g Tr., at 11:4–10.)

Whether dismissal is appropriate as a sanction is within the trial court's discretion. Dodson, 86 F.3d at 39. Although "dismissal is a harsh sanction to be used only in extreme situations . . . [w]hen faced with a fraud upon the court . . . such a[] powerful sanction is entirely appropriate." McMunn, 191 F. Supp. 2d at 461; see Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., 685 F. Supp. 2d 456, 469–70 (S.D.N.Y. 2010), abrogated on other grounds by Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135 (2d Cir. 2012) ("[A] terminating sanction is justified in only the most egregious cases, such as where a party has engaged in perjury, tamper[ed] with evidence, or intentionally destroy[ed] evidence . . . ." (emphasis added)). Lawrence's conduct "requires that the policy favoring adjudication on the merits yield to the need to preserve the integrity of the courts." Shangold, 2006 WL 71672, at *1. Accordingly, this case is dismissed.

V.     Attorneys' Fees

In addition to dismissal, Defendants seek attorneys' fees and costs. Specifically, they seek the reimbursement of 799.25 hours of work performed from September 27, 2016 to the present, amounting to $239,775 in fees and $1,657.85 in costs. (Jaffe Decl., ¶¶ 46–47.) Because this Court finds only Lawrence's behavior sanctionable, it considers Defendants' fee request based on her conduct.

"The deterrent effect of an award of attorney's fees is obviously dependent on the extent of the sanctioned party's resources. The poorer the offender, the smaller need be the sanction to ensure the desired deterrent effect." Kappenberger v. Oates, 663 F. Supp. 991, 994 (S.D.N.Y. 1987). "[I]t lies well within the district court's discretion to temper the amount to be

17

awarded against an offending [party] by a balancing consideration of [her] ability to pay." Oliveri, 803 F.2d at 1281; see also Serrano v. Shield Inst. of David, Inc., 1997 WL 167042, at *6 (S.D.N.Y. Apr. 9, 1997) ("Before awarding attorney's fees, a court should take into account the financial circumstances of the party to be sanctioned.").

Lawrence is a widow, rents an apartment, and as of November 2015 was unemployed. (See Exhibit U to Reply Decl. of Evan F. Jaffe in Supp. of Defs.' Mot. for Sanctions & Attorneys' Fees, ECF No. 134, at 8:18; 9:21; 10:19.) "An award in the amount required by Defendants would wreak financial ruin on Plaintiff[], and in the final analysis, dismissal of Plaintiff['s] lawsuit is the appropriate sanction that offers the closure that Defendants have earned." Shangold v. Walt Disney Co., 2006 WL 2884925, at *1 (S.D.N.Y. Oct. 11, 2006). Accordingly, this Court denies Defendants' request for attorneys' fees and costs. Indeed, an award of attorney's fees "would be a hollow victory . . . as it would likely be uncollectible." McMunn, 191 F. Supp. 2d at 462; see Slate, 941 F. Supp. 2d at 52 (imposing dismissal instead of fees as the pro se party would be unable to pay).

## CONCLUSION

For the foregoing reasons, Defendants' motion for sanctions, attorneys' fees, and costs is granted in part and denied in part. As a sanction for Lawrence's fraud upon this Court, this action is dismissed. Defendants' motion for sanctions against Leventhal is denied. The Clerk of Court is directed to terminate all pending motions, mark this case as closed, and mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED:

Dated: July 27, 2018
      New York, New York

WILLIAM H. PAULEY III
U.S.D.J.

18